**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**KAREEM HORTON,**                       )
                                         )
             **Plaintiff,**              )
                                         )
**v.**                                   )           **Civil Action No. 5:10-0290**
                                         )
**D. BERKEBILE,** *et al.*,              )
                                         )
             **Defendants.**             )

**PROPOSED FINDINGS AND RECOMMENDATION**

On March 10, 2010, Plaintiff, acting *pro se* and incarcerated at FCI Beckley, filed his

Application to Proceed Without Prepayment of Fees and Complaint in this matter claiming

entitlement to relief pursuant to Bivens v. Six Unknown Named Federal Agents of Federal Bureau

of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 2.)

Plaintiff names the following as Defendants: (1) D. Berkebile, Warden; and (2) V. Blankenship, Oak

Unit Manager. (Document No. 2.) Plaintiff alleges that Defendants are violating his constitutional

rights by (1) restricting access to his legal documents, and (2) refusing to allow other inmates to

review his legal documents to assist him in preparing his Supplemental Brief to be filed in his direct

appeal of his conviction. (Id.) Plaintiff explains that in November, 2009, his attorney mailed to him

the "pre-trial, trial, and sentencing transcripts." (Id., pp. 9 - 10.) Plaintiff complains that Defendant

Blankenship advised him that "a new Program Statement . . . prevents an inmate from possessing

his transcripts." (Id., p. 10.) Plaintiff further claims that Defendant Blankenship "denied Plaintiff

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less
stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally.
*See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

from having an inmate review his transcripts in her office in order to obtain the necessary information to perfect his direct appeal." (Id.) Plaintiff explains that "[o]n February 19, 2010, Plaintiff sought the assistance of Inmate Lopez, # 54402-053, to review the legal material with him at the Unit Team Office, but Ms. Blankenship denied Inmate Lopez from coming into the Oak Unit and informed Plaintiff that he had to find someone in the Oak A Upper Unit to assist him." (Id., p. 12.) Plaintiff states that he "then sought the assistance of Inmate Lyndell Thomas, # 14964-056, who also went to Ms. Blankenship to set up a time that he and Plaintiff could review said legal material in the Oak A Upper Unit Team Office, [but] Ms. Blankenship denied that request." (Id.) Plaintiff alleges that Defendant Blankenship explained that "Warden Berkebile had informed her that no inmate could review another inmate's legal material." (Id.) Plaintiff alleges that he "needs his transcripts to carry with him to the leisure library in order to have an inmate with a legal understanding to assist him with the preparation of his Supplemental Brief." (Id.) Plaintiff alleges that Defendant Berkebile is violating his constitutional rights by "instructing Ms. Blankenship not to allow any inmate to review another inmate's legal documentation held in the Unit Team Office." (Id., p. 15.) Plaintiff argues that he should be allowed to possess his transcripts because he has "not assisted the government in any way, is not gang affiliated, has little financial resources, and no other reason as to why his possessing his legal materials would disrupt the orderly running of the institution." (Id., p. 16.) Plaintiff requests injunctive and monetary relief. (Id., pp. 16 -18.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Request of Administrative Remedy Informal Resolution Form" dated November 17, 2009 (Id., pp. 19 - 20.); (2) A copy of Plaintiff's "Request for Administrative Remedy" dated December 4, 2009 (Id., pp. 21 - 22.); (3) A copy of Warden Berkebile's Response dated February 1, 2010 (Id., p. 23.); (4) A copy

2

of Plaintiff's "Regional Administrative Remedy Appeal" dated February 19, 2010 (Id., pp. 24 - 25.);
(5) A copy of "Anders Notice" as filed in United States v. Kareem Hortion, 1:08-cr-0480 (4th Cir.)
on January 19, 2010 (Id., p. 26.); (6) A copy of a letter from Attorney James B. Craven, III, to the
Fourth Circuit Court of Appeals dated January 29, 2010 (Id., p. 27.); (7) A copy of a letter from
Attorney  Craven to Warden Berkebile dated February 8, 2010 (Id., p. 28.); and (8) A copy of a
Order entered in the Fourth Circuit on February 11, 2010, granting Plaintiff an extension of time
until March 22, 2010, to file his Supplemental Brief (Id., p. 29.).

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner
seeks redress from a governmental entity or officer or employee of a governmental entity. On
screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious
or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is
based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct.
1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact."
Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim
lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490
U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic
or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails
to state a claim upon which relief can be granted factually when it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With
these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

4

1.      **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may

not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an

Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., §

8

542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies.  (Document No. 2, p. 11.) Plaintiff, however, argues that he should be excused from exhaustion because "the Fourth Circuit Court of Appeals has ordered Plaintiff to perfect a Supplemental Brief" by March 22, 2009. (Id.) Plaintiff asserts that he "can not afford to exhaust the entire Administrative Remedy Process." (Id.) The United States Supreme Court, however, has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[3] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R.

---

[3] Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

§ 542.10, *et seq.*, prior to filing his Complaint. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claim.

**2.     Access to Court.**

The United States Supreme Court discussed the right of prisoners to access to the Courts in Lewis v. Casey, 518 U.S. 343, 116 S.Ct.  2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the Lewis Court explained and elaborated upon its earlier decision in Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977), as follows:

> The right that Bounds acknowledged was the (already well-established) right of *access to the courts*. In the cases to which Bounds traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 350 - 51, 116 S.Ct. at 2179 - 80. [Emphasis in opinion; citations omitted.] Many Courts, including the Fourth Circuit, have found that a cause of action is stated for violation of the right of meaningful access to the Courts where it is alleged that prison officials confiscated and/or destroyed legal materials or papers and hindered efforts to pursue legal claims. Carter v. Hutto, 781 F.2d 1028, 1031 - 32 (4th Cir. 1986)(Finding that the alleged seizure and destruction of an inmate's

legal materials relating to his application for a writ of *habeas corpus* stated "a valid claim based on the deprivation of access to the courts, a right of vital importance to prisoners and to the integrity of our criminal justice system."); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)(Finding that the confiscation of legal materials and the denial of writing supplies could constitute an unconstitutional interference with an inmate's right of access to the courts.). However, "the temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." Vigliotto v. Terry, 873 F.2d 1201, 1202 - 1203 (9th Cir. 1989)(Plaintiff was not denied his right of access to the courts when prison officials confiscated his legal materials for three days and threatened to destroy the materials if plaintiff did not have them removed and the materials were then lost.)

It is clear from the Lewis Court's decision that a complaint alleging deprivation of the right of access to the Courts must include a statement indicating some palpable actual injury. The Lewis Court stated in its Syllabus as follows:

> [T]o establish a Bounds violation, the actual injury that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. This requirement derives ultimately from the doctrine of standing. Although Bounds made no mention of an actual injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

Lewis, 518 U.S. at 343, 116 S.Ct. 2176. The Lewis Court explained further as follows:

> . . . Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355, 116 S.Ct. at 2182. Accordingly, where it is alleged, as it is in this case, that

11

prison officials withheld legal materials and hindered efforts to pursue legal claims, it must also be alleged and shown that the prison officials' conduct actually resulted in the complainant's inability to proceed in Court.

Based upon a thorough review of the record, the undersigned finds that Plaintiff has failed to allege any facts which suggest that Defendants' conduct has deprived him of access to the Courts, *i.e.*, that he has suffered any harm or prejudice as a result of the alleged restricted access to transcripts of certain criminal proceedings. Plaintiff merely complains that Defendants are restricting his access to the transcripts. Plaintiff explains that he anticipates the restriction will prevent him from filing a Supplemental Brief with the Fourth Circuit Court of Appeals. Based on a review the record, the undersigned finds that Plaintiff filed a 33-page Supplemental Brief that was considered by Fourth Circuit.[4] The undersigned, therefore, has thoroughly reviewed the record and is unable to find any allegation or indication of actual injury resulting from Plaintiff's alleged restricted access

---

[4] The Fourth Circuit issued Anders Notice on January 19, 2010, ordering that Plaintiff file any Supplemental Brief by February 19, 2010. *United States v. Horton*, Case No. 09-4713, Document No. 47. On February 8, 2010, Plaintiff filed a "Request for Leave to File a Pro Se Supplemental Brief" and Motion for Abeyance, or in the Alternative for an Extension of Time to File His Supplement Brief. *Id.*, Document Nos. 54 and 55. By Order entered on February 11, 2010, the Fourth Circuit granted Plaintiff an extension of time until March 22, 2010, to file his *pro se* Supplemental Brief. *Id.*, Document No. 57. On March 16, 2010, Plaintiff filed his second Motion for Extension of Time to File Supplement Brief. *Id.*, Document No. 58. By Order entered the same day, the Fourth Circuit granted Plaintiff's Motion extending the time for filing of the Supplement Brief to April 22, 2010. *Id.*, Document No. 59. Plaintiff filed his third Motion for Extension of Time on April 28, 2010, which the Fourth Circuit granted. *Id.*, Document Nos. 60 - 61. On May 6, 2010, Plaintiff filed his Supplemental Brief. *Id.*, Document No. 62. In his Supplemental Brief, Plaintiff argued as follows: (1) Plaintiff's indictment was void because it was not signed by the grand jury foreman in violation of Fed. R. Crim. P. 7(c); (2) The evidence was insufficient to support his conviction; (3) The District Court erred by allowing the Government to present testimony regarding an aborted third firearms transaction; and (4) The District Court erred by enhancing his sentence under U.S.S.G. § 2K2.1(a)(2) and (b)(6). On August 25, 2010, the Fourth Circuit affirmed Plaintiff's conviction and sentence. *United States v. Horton*, 392 Fed.Appx. 217 (4th Cir. 2010).

to transcripts.[5] Accordingly, the undersigned finds that Plaintiff's above claim should be dismissed.

**3.      No Violation of Equal Protection.**

Plaintiff alleges that Defendants discriminated against him by restricting his access to transcripts of certain criminal proceedings. (Document No. 2, p. 16.) The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling

---

[5]  Plaintiff was represented by counsel in his direct appeal. It is well established that the representation by counsel negates a prisoner's claim of inadequate access to the courts. *See Bourdon v. Loughren*, 386 F.3d 88, 94 (2nd Cir. 2004)(holding that "the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts"); *Hause v. Vaught*, 993 F.2d 1079, 1084 (4th Cir. 1993)(finding that a prisoner's right to meaningful access to the court "can be satisfied either by providing prisoners with adequate law libraries or with adequate assistance from persons trained in the law"); *United States v. Smith*, 907 F.2d 42, 45 (6th Cir. 1990)(holding that "the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves" and waive their right to counsel); *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3rd Cir. 1988)(found "*Bounds* to hold that the provision of lawyers is one means by which a state may provide prisoners with meaningful access to courts"); *United States v. Wilson*, 690 F.2d 1267, 1272 (9th Cir. 1982)(court-appointed counsel satisfies the right to meaningful access to the courts); *Cruz v. Hauck*, 515 F.2d 322, 331-33 (5th Cir. 1975)("access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State.")

governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

The undersigned finds Plaintiff's conclusory allegation that Defendants violated his right to equal protection to be insufficient. First, the Court notes that Plaintiff fails to allege that he was treated differently than another similarly-situated inmate. Further, Plaintiff has not shown that he was singled out for harsher treatment. Finally, Plaintiff has not alleged that the decision to restrict his access to trial transcripts was based on any suspect classification. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1.), **DISMISS** Plaintiff's Complaint (Document No. 2.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 26, 2012.

R. Clarke VanDervort
United States Magistrate Judge